

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

GERALD C. MANN
XXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. John Stapleton
County Attorney
Floyd County
Floydada, Texas

Dear Sir:

Opinion No. O-1254
Re: Did the office of county super-
intendent of public instruction of
Floyd County terminate when the schol-
astic population fell below 3000 in
1938? And related questions.

Your request for an opinion on the questions as are herein stated
has been received by this department:

"Did the office of county superintendent of public instruction
of Floyd County terminate when the scholastic population of Floyd County
fell below 3000 in 1938? If such office did terminate, are Mr. Travis
and Mr. Guffie entitled to the monies they have received as salary for
their services in that capacity since January 1, 1939?

"If it should be held that Floyd County has a valid office of
county superintendent of public instruction, does the appointment of the
Commissioners' Court of Mr. Guffie, as set out above, continue merely
until the next biennial election, or does it continue until the next
general election at which a county superintendent would normally be
elected? In either instance does Mr. Guffie's term for which he was ap-
pointed cease as soon after the general election as the elected official
qualifies?

"If the population of Floyd County falls below 10,000 according
to the 1940 Federal Census, will the office of Assessor and Collector
of Taxes as a separate office in Floyd County, terminate?"

Your letter reads in part as follows:

"At the June Term, 1924, of the Commissioners' Court of Floyd
County, the attention of such court was called to the fact that Floyd
County had a scholastic population of 3101 according to the scholastic
census of that year. At that meeting the court appointed a county super-
intendent of public instruction and provided for the election of a county
superintendent at the 1924 general election. Prior to that time the county
judge has served as ex-officio superintendent. From that time to the
present Floyd County has had an office of county superintendent of public
instruction. The office was not created by a vote of the people at an
election held for that purpose.

"The 1938 scholastic population of Floyd County, as determined
by the scholastic census taken that year, was 2,758. Walter Travis was

a candidate for the office of county superintendent of public instruction of Floyd County in the 1938 general election and received a majority of all the votes cast for that office in such election. Mr. Travis qualified and was issued a commission by the governor; he served in the office from January 1, 1939, to July 1, 1939, at which latter date he resigned. The Commissioner's Court of Floyd County appointed Clarence Guffie to serve Mr. Travis's unexpired term. Mr. Guffie has served in such office since July 1, 1939, and at the present time is still serving in such office and receiving pay therefor."

Article 2688, Revised Civil Statutes, as amended, reads as follows:

"The Commissioners' Court of every county having three thousand (3,000) scholastic population or more as shown by the preceding scholastic census, shall at a General Election provide for the election of a County Superintendent to serve for a term of four (4) years, who shall be a person of educational attainments, good moral character, and executive ability, and who shall be provided by the Commissioners' Court with an office in the courthouse, and with necessary office furniture and fixtures. He shall be the holder of a teacher's first grade certificate or teacher's permanent certificate. In every county that shall attain three thousand (3,000) scholastic population or more the Commissioners' Court shall appoint such Superintendent who shall perform the duties of such office until the election and qualification of his successor. In counties having less than three thousand (3,000) scholastic population whenever more than twenty-five per cent (25%) of the qualified voters of said county as shown by the vote for Governor at the preceding General Election shall petition the Commissioners' Court therefor, said Court shall order an election for said county to determine whether or not the office of County Superintendent shall be created in said county; and, if a majority of the qualified property taxpaying voters voting at said election shall vote for the creation of the office of County Superintendent in said county, the Commissioners' Court, at its next regular term after the holding of said election, shall create the office of County Superintendent, and name a County Superintendent who shall qualify under this Chapter and hold such office until the next General Election. Provided, that in all counties having a population in excess of three hundred and fifty thousand (350,000) inhabitants according to the last available Federal Census the County Superintendent shall be appointed by the County Board of Education and shall hold office for two (2) years, provided further, that this provision shall not operate so as to deprive any elected Superintendent of his office prior to the expiration of the term for which he has been elected; provided further that in counties having a scholastic population of between three thousand (3,000) and five thousand (5,000) scholastics, wherein the office of County Superintendent has not been created and a Superintendent elected, then in such counties the question of whether or not such office is established shall be determined by the qualified voters of said county in a special election called therefor by the Commissioners' Court of said county, upon petition therefor as hereinabove specified."

Hon. John Stapleton, page 3 (O-1254)

The case of Marfa Independent School District vs. Davis, County Judge, et al, 102 SW 2nd 283, construing Article 2688, Revised Civil Statutes, as amended, holds in effect that the purpose of amendment relating to establishment of office of County Superintendent in counties having a certain scholastic population is to provide a method whereby voters may determine whether the office is created when Commissioners' Courts fail to act and not to make existence of such offices in those counties having or attaining the designated scholastic population dependent upon election being called and that the office of County Superintendent is held to exist in a county having a scholastic population of three thousand and eighty where the Commissioners' Court called an election for such office and superintendent was elected, notwithstanding question of whether such office should be created was not determined at an election under statute. (Referring to Art. 2688)

The case of Miller vs. Brown, 216 SW 452, was a case in which the facts are very similar to the facts presented in your inquiry and this case holds in effect that the office of County Superintendent of Public Instruction depends for its existence, under article 2750 (now Article 2688) based on the condition of the scholastic census at each general election, no election to such office being valid in a county having a scholastic population of less than three thousand as shown by the preceding census, except in counties where the office has been created by an election held for that purpose. Since it was not the purpose of this article, to create the office of County Superintendent of Public Instruction, nor authorize the election to the same, in counties having a scholastic population of less than three thousand as shown by the preceding census, except in counties where such office has been created by an election held for that purpose, and that one elected to such office in a county having a scholastic population of less than three thousand, where such office was not created by an election held for that purpose, even if termed a de facto officer, is not entitled to the emoluments of the office for the term for which elected.

The year of 1938 was a year for the election of a County Superintendent of Public Instruction in Floyd County and the scholastic population of Floyd County fell below three thousand in 1938.

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this department that the office of County Superintendent of Public Instruction terminated in Floyd County when the scholastic population of such county fell below three thousand in 1938 and that the office of County Superintendent of Public Instruction has had no existence, potential or otherwise, since January 1, 1939. You are further advised that it is our opinion that neither Mr. Travis nor Mr. Guffie are entitled to the emoluments of the office since January 1, 1939 and that the Commissioners' Court of Floyd County cannot appoint Mr. Guffie to an office that did not exist at the time of his appointment.

Answering your question as we have, it is not necessary to answer your second question as above quoted.

The third question submitted in your inquiry has been answered in our opinion No. O-1105; therefore, we enclose a copy of this opinion herewith.

Trusting that the foregoing fully answers your inquiries, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams
Assistant

AW:AW:LM

ENCLOSURE

APPROVED SEP 19, 1939

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY /s/ B.W.B.
CHAIRMAN